ERVIN *v.* COLBY.

ROBERT L. ERVIN *vs.* WILLIAM E. COLBY & TRUSTEE.

Kennebec.    Opinion March 29, 1920.

*Option.    Attempted acceptance by telegram.    Terms of contract not met.    Expiration.*

This is an action of assumpsit in which the plaintiff seeks to recover the sum of seven hundred dollars, as commission for procuring a sale of ice for the defendant.

The contract of employment involved an option.

Among other things was this vital provision:  "$3062.50 to be paid on acceptance of option and this option will expire on or  before 6 P. M."   A telegram was sent, on the day of expiration, at 4.44 P. M. accepting the offer.

At about 8 P. M. the same day, a telegram was sent in reply declining to accept the offer, on the ground that the money was not paid.   No money was paid or offered until the next day.

*Held:*

(1)   That time is the essence of an option.

(2)   That an offer to pay money by telegram is neither payment nor tender.

(3)   That acceptance and payment were to concur on or before the designated hour, to meet the terms of the contract.

(4)   That payment, having been neither made nor tendered on or before 6 P. M., the option expired at that hour.

This is an action of assumpsit to recover seven hundred dollars as commission for procuring a sale of ice for the defendant.    Plea, the general issue.    Verdict for plaintiff for full amount claimed.    Defendant filed a general motion for a new trial.    Motion sustained.    New trial granted.

Case stated in the opinion.

*Harvey D. Eaton,* for plaintiff.

*F. W. Clair,* for defendant.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

SPEAR, J.    This is an action of assumpsit in which the plaintiff seeks to recover the sum of seven hundred dollars, as commission for

procuring a sale of ice for the defendant. There is no question that the defendant agreed to pay the plaintiff twenty cents a ton for selling the ice. The contract by which the plaintiff was authorized to sell the ice was in writing as follows: "To whom it may concern. I, William Colby of Waterville, hereby agree to sell and convey all the ice in my ice houses now in Winslow, Me. estimated at 3500 tons for $3.50 per ton of two thousand pounds, f. o. b. Winslow, Maine.

Payments to be made as follows: $3062.50 to be paid on acceptance of this option and to apply to the last quarter of the above amount of ice. Other payments to be made when bill of laden is received.

This option will expire at 6 P. M. March 27, 1919. All ice must be taken before Sept. 1, 1919. If this option is accepted, the final details can be arranged when purchased." The instrument was signed and sealed. The plaintiff procured the Schipper Bros. Coal Mfg. Co. as prospective purchaser and optionee.

The evidence shows that on March 27, 1919, at 4. 44 P. M. the optionee sent the following telegram: "W. E. Colby, Waterville, Maine. We accept option on 3500 tons ice at $3.50 on board cars at Winslow, Maine. Mr. Glazier leaving tonight to arrange details with you." This telegram was communicated to the defendant's wife, and by her repeated to him between six and a quarter past six o'clock.

In the evening about eight o'clock the defendant sent the following telegram in reply: "Schipper Bros. Coal Mfg. Co. Boston, Mass. Don't send man. Offer in option not complied with because of nonpayment of sum named therein. W. E. Colby."

The next day the defendant disposed of the ice, by sale or option, to the optionee at $3.75 per ton, an advance of twenty-five cents. For the purposes of this decision it is immaterial whether the defendant sold, or gave an option on, the ice.

The basis of the plaintiff's claim as he says is this: "I claim that I produced a customer to buy the ice."

We are of the opinion that this contention cannot prevail.

The plaintiff was not working under a general authority to furnish a customer who stood ready to buy and to comply with the broker's contract of employment, but under a specific contract, legally defined as an option. An option "is simply a contract by which the owner of property agrees with another person that he shall have the right

to buy his property at a fixed price at a given time." *Hanscom* v. *Blanchard*, 117 Maine, 501. A reference to the terms of this contract will show that the plaintiff was to do more than furnish a customer to buy the ice. His contract was an option, either to buy himself, or procure some other purchaser, in accordance with the terms of the option. His commission depended upon fulfilling the terms of the option, not merely in furnishing a party who was ready to buy, upon any other terms. A broker cannot claim his commission upon procuring a purchaser who makes an offer at variance with the contract of employment. This rule is stated in 4 R. C. L. 313, 52, and adopted in *Hanscom* v. *Blanchard*, supra, as follows: "If he accepts (the variance) he is legally obligated to compensate the broker for the services rendered; but if he refuses he incurs no liability whatever, for if he does not see fit to modify his original proposals, the broker can lay no claim to his commissions, until he produces a person who is ready, able and willing to accept the exact terms of his principal. This is true, no matter how small the variance may be between the contract, tendered by the broker and that authorized by his employer."

This rule applies as well to an option as to any other form of brokerage contract; with reference to the strict purpose of an option it is said, *Hanscom* v. *Blanchard*, supra, 4 R. L. C., 315, 53: "When a broker is engaged to negotiate a transfer or sale of certain real or personal property, the mere procurement of a prospective purchaser who enters into an option to buy the property in question, but never in fact does so is not sufficient to constitute a performance by the broker of his contract of employment and he is not entitled to his commissions, nor even to a percentage of the earnest money deposited by the defaulting optionee."

"It was the duty of the broker in the first instance to procure a purchaser who was ready and willing to meet the exact terms of the contract to make a sale. Even an offer of better terms will not suffice. But if the broker introduces parties with whom the seller makes a different contract, resulting in a sale, he is entitled to his commission." *Hanscom* v. *Blanchard*, supra.

The plaintiff claims under the latter principle, but the trouble is that the facts bring his case within the doctrine of the former. The plaintiff was acting under a specific contract by the terms of which he himself might exercise the option therein specified, or might procure

any other party to exercise it. But in either case the contract must be fulfilled by the optionee, whoever he might be. In this case the Coal Company undertook to exercise the option, but failed to meet the terms of the contract. "It is as much incumbent upon an optionee to comply with the terms of his option as upon a direct contractor to comply with the terms of his agreement." *Hanscom* v. *Blanchard*, supra.

And here it may be said that time and payment when prescribed as conditions of exercising it, are the very essence of an option. The property, whether real or personal, is held in abeyance in the hands of the optionee, during the life of the option. The owner is helpless to dispose of it, however advantageous the offer he may receive in the meantime. Accordingly, the moment the option expires, the owner's obligations are released and his rights instantly restored. For "an agreement in writing to give a person the option to purchase . . . . within a given time, at a named price is neither a sale nor an agreement to sell." *Hanscom* v. *Blanchard*, supra. It simply is a contract by which the owner says he will give another person the right to buy at a fixed price at a given time.

The present contract provided: "$3,062.50 to be paid on the acceptance of this option," and that "this option will expire at 6 P. M. March 27, 1919." This money was not paid nor tendered on or before 6 P. M. In regard to this fact there is no controversy. An offer by telegram to pay it was neither payment nor tender.

The terms of this option were explicit and definite. They could not be misread or misunderstood. The option was not only to be accepted by 6 P. M., but the money was "to be paid" by that time. Acceptance and payment were to concur, on or before the designated hour, to meet the terms of the contract. One was as essential as the other.

There is no evidence in the case that tends to show any waiver of the terms of the contract, but on the contrary the telegram sent to the Coal Company in the evening, after the expiration of the option, expressly negatives any waiver. Nor does the evidence disclose any transaction between the defendant and the plaintiff or the Coal Company that tended to establish any recognition of the contract, that could be construed into a revival or continuation of the prior negotiations.

The parties, accordingly must stand or fall upon the terms of the contract, and performance or non-performance thereof.

Whatever may have been the moral obligation of the defendant to recognize the services of the plaintiff which resulted in a sale of its ice, we are unable to find any legal obligation which enjoined him to pay a commission to the plaintiff.

*Motion sustained.*
*New trial granted.*